ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

RYAN ARASH REZAEI (CABN 285133)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
FAX: (415) 436-7234
ryan.rezaei@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 3:24-cr-00277 MMC |
| Plaintiff, | ) | UNITED STATES' DETENTION MEMORANDUM |
| v. | ) | |
| LUKE BRUGNARA, | ) | |
| Defendant. | ) | |

## I.    INTRODUCTION

Luke Brugnara is an incorrigible menace who for two decades has – at least when he's not been in federal prison – made a career of committing crime.  Those crimes range from filing false tax returns and making false statements[1] to perpetrating an art fraud scheme in 2014.[2]  For perpetrating his art fraud scheme – and committing other crimes including escape – Brugnara was sentenced to 84 months imprisonment.

---

[1] *See* Nos. 8-CR-222 WHA, Doc. 68 (2010 superseding indictment charging Brugnara with three counts of filing false tax returns in 2002 and 2004 and one count of obstructing the administration of Internal Revenue laws from 1998 through 2005) and 8-CR-236 MMC (2008 indictment charging Brugnara with two counts of making false statements and four counts of violating the Endangered Species Act).

[2] No. 14-CR-306 WHA, Doc. 348 (2015 superseding indictment charging Brugnara with four counts of wire fraud, one count of mail fraud, two counts of false declaration before a court, escape, and contempt of court).

GOVERNMENT DETENTION MEMORANDUM          1
3:24-cr-00277 MMC

Not only does Brugnara seem to like committing federal crime, he's responsible for a notorious escape from the San Francisco federal courthouse:



I-TEAM EXCLUSIVE: San Francisco real estate mogul, art scammer 'Lucky Luke' gives first jailhouse interview.

This still captures Brugnara literally running full speed from the San Francisco courthouse during the pendency of his art fraud case. *See* ABC 7 News, *EXCLUSIVE: SF real estate mogul, art scammer, gives jailhouse interview*, https://abc7news.com/lucky-luke-san-francisco-real-estate-mogul-brugnara-dan-noyes-i-team/960144/ (last viewed June 24, 2024).

For the ordinary defendant, one escape might be enough. But "Lucky Luke," as he was once described by ABC 7, is no ordinary defendant. He's got more. In 2023, Brugnara was sentenced to 456 days imprisonment after his supervised release was revoked for absconding from supervision, among other violations. No. 17-cr-00306 WHA, Doc. 1157. Brugnara had absconded for two months. Then, in May 2024, after he was sent to a reentry center to serve the remainder of his 456-day term, Brugnara escaped again. He was gone for about a week until the U.S. Marshals Service located him and his girlfriend at a hotel near the San Francisco airport.

Brugnara is back again, this time charged with multiple counts of wire fraud and money laundering stemming from his scheme to defraud the United States and the Small Business Administration. As part of his scheme, in 2021, Brugnara fraudulently obtained a loan under the Paycheck Protection Program. Instead of using that loan as represented – to cover payroll – he used the loan proceeds to buy a house.

The United States seeks Brugnara's detention. The United States is entitled to a detention hearing as Brugnara poses a serious risk of flight. The preponderance of the evidence establishes that Brugnara will not appear as required and there's clear and convincing evidence that Brugnara is a danger to the community.

## II.    RELEVANT BACKGROUND

### A.    Criminal History

As referenced, Brugnara has a lengthy criminal history, including three separate federal cases in this district. First, in No. CR-8-00222 WHA, Brugnara was convicted of multiple counts of filing false tax returns and sentenced to 30 months imprisonment. Second, in No. CR-8-00236 MMC, Brugnara was convicted of multiple violations of the Endangered Species Act and making false statements. He was sentenced to 15 months imprisonment. Finally, in CR-14-00306-WHA, Brugnara was convicted of multiple counts of fraud, false declaration before a court, contempt, and escape, arising from an art fraud scheme. He was sentenced to 84 months imprisonment.

### B.    Current Charges

In November 2020, Brugnara was released from federal prison. Less than two months later, in January 2021, he applied for a COVID-19 loan on behalf of his company, Brugnara Corporation, under the Economic Injury and Disaster Loan program. In those applications, he falsely represented that Brugnara Corporation had $13.75 million in gross revenues and Brugnara Corporation had four employees. The loan applications were rejected because Brugnara Corporation was engaged in ineligible business activity (real estate). Declination letters explaining the rejection – that the company's business activity was ineligible – were sent to Brugnara at the address listed as the company's business address.

A month later, Brugnara submitted a first draw loan application on behalf of Brugnara

GOVERNMENT DETENTION MEMORANDUM    3
3:24-cr-00277 MMC

Corporation under the Paycheck Protection Program, a different COVID-19 program.  The application – which Brugnara filed in the name of his wife Kay Brugnara – contained a number of material misrepresentations.  Among other things, Brugnara falsely represented that Kay Brugnara was Brugnara Corporation's sole owner.  (Brugnara had listed himself as the company's sole owner just one month before in the rejected EIDL applications; he had also listed himself as the company's sole owner when he opened a Wells Fargo business account in December 2020, just one month after his prison release.)

Brugnara also misrepresented Brugnara Corporation's business.  Whereas in the EIDL applications Brugnara listed the company's business as real estate, in the first draw PPP application, Brugnara represented that the company's business was equipment rental and leasing.  Brugnara knew he needed to change the description of the company's business for purposes of the PPP application after he received letters explaining that his prior EIDL applications were rejected because the company's business activity – real estate – was ineligible.

In addition to these false representations, Brugnara misrepresented what he intended to do with the loan proceeds.  Brugnara represented that the PPP loan proceeds – he received $422,500 in all – would be used to cover payroll.  But instead of using the loan proceeds to cover payroll, he used them to help purchase a house on 43rd Avenue in San Francisco.  This misrepresentation lies at the center of Brugnara's fraud scheme.

Not only did Brugnara trick the Small Business Administration into giving him a loan – which he then used to buy the 43rd Avenue house – he tricked a San Francisco housekeeper into helping finance the purchase of that very same house.  More specifically, in December 2020, following his release from prison, Brugnara met M.G. online and convinced her to let him move in with her.  As corroborated by text messages, Brugnara raised the idea of having her help him purchase a home.  M.G. was worried about being considered a straw purchaser, but Brugnara assuaged any fears she had.  He promised M.G. that they would move into the home together.

Based on all of that, in early 2021, M.G. filled out a home loan application to help finance the purchase of the 43rd Avenue house (as stated, funds from the PPP loan were also used to purchase the house).  Once the purchase was finalized, Brugnara moved out of M.G.'s apartment.  But Brugnara did not allow M.G. to move into the 43rd Avenue house.  Instead, Brugnara's family moved into the house.

It got worse. Because Brugnara subsequently failed to make payments on the loan, it went into default. M.G. was stuck with the defaulted loan.

Brugnara's text messages with M.G. show how abusive he was to her. For example, after M.G. sent Brugnara a blog about straw purchasers, Brugnara lashed out to M.G.:

> I've done over 2 billion dollars of real estate transactions over the last 28 years with my attorney involved and every step of the process Robert Kane.

> For you, a maid, to try to tell me about the law is ridiculous, absurd, and insulting.

Brugnara then instructed M.G. to stop texting his phone because it was being monitored by the federal government (again, during this time, Brugnara was on supervised release):

> I do not do anything illegal. Everything I do is approved by my attorney Robert Kane..Please do not make such FALSE statements on this phone/text which is being monitored by the federal government!!!

> Please stop texting on this phone!!

> I already told you that my phones are monitored... My attorney has advised me not to text on these phones about anything because he's involved in all transactions that I engage.

Following these messages, Brugnara continued to string M.G. along, even though M.G. had pointed out that Brugnara had promised he would allow her to move into the house or buy her a condominium.  Of course, that never happened.

**C.    Escape from the residential reentry center**

As previously noted, Brugnara escaped from federal custody as recently as two months ago.  The United States obtained the following information about Brugnara's May 2024 escape from the residential reentry center:

- Thursday, May 2.  Brugnara arrived at the residential reentry center in Oakland (the "RRC"). As mentioned in Court, Brugnara was released to the RRC to serve the remainder of the 456-prison term Judge Alsup had imposed in mid-2023 after revoking Brugnara's supervised release.  Brugnara's term is set to expire in August 2024.

- Thursday, May 9.  The U.S. Marshals received an escape notice at 2:30 p.m. from the Bureau of Prisons.  USMS learned that RRC staff conducted a work site check at 11:30 a.m. but did not find Brugnara.  (Brugnara's purported employer, FITSKM LLC, is discussed below.) RRC staff stayed at the site until 2:00 p.m.  At 2:15 p.m., Brugnara contacted BOP and said he did not know when he would be able to return to the RRC.  USMS then received the escape notice.  After USMS received the escape notice, at 4:11 p.m., Brugnara returned to the RRC.  About an hour later, the RRC contacted USMS and requested that USMS pick up Brugnara and return him to Santa Rita Jail to serve the remainder of his 456-day term.  In other words, the RRC was kicking Brugnara out of the RRC.

- Friday, May 10.  The next day, USMS picked up Brugnara from the RRC to transfer him to Santa Rita Jail.  But on the way, Brugnara complained of chest and back pain.  Brugnara was taken to the hospital.  After Brugnara's discharge, USMS attempted to take Brugnara back to Santa Rita Jail.  But Santa Rita Jail rejected Brugnara because he was suicidal.  After taking Brugnara to the hospital a second time, USMS returned Brugnara to the RRC.  The RRC was ordered to keep Brugnara in an isolation medical room.

- Saturday, 5/11.  At 11:18 a.m., Brugnara walked up to the monitor station and handed security monitors a note declaring his intent to leave the facility.  Brugnara walked out the

front door of the facility without authorization and left.  USMS received notice of Brugnara's second escape.

- Friday, May 17.  Six days later, USMS arrested the defendant at a hotel near the San Francisco Airport.  Yitong Wen was with Brugnara at the time of his arrest and had rented the hotel room where they were found.  Between May 11 and the day of his capture, Brugnara had no contact with the RRC.

**D.      Brugnara misled the RRC about FITSKM LLC**

As noted in the above timeline, Brugnara's purported employer was FITSKM LLC, located at a residence on Washington Street, in San Francisco.  Brugnara failed to inform the RRC the following about that company:

- First, the company is currently owned by Brugnara's long-time girlfriend, Yitong Wen. Brugnara has been with Wen since at least 2021.
- FITSKM's listed address – the Washington Street residence – is where her parents live.
- Back in 2021, after having had M.G. purchase the 43rd Avenue house, Brugnara purportedly transferred ownership of the 43rd Avenue house to FITSKM LLC, as reflected in the following handwritten affidavit recovered from Brugnara's storage unit:

- Then, in September 2021, Brugnara's own company, Brugnara Corporation, purportedly purchased FITSKM LLC, as reflected in the following affidavit:

> SALE AND TRANSFER
> OF FITSKM LLC
>
> ON THIS DATE, SEPTEMBER 28, 2021, FOR VALUABLE CONSIDERATION RECEIVED, THE AMOUNT AND SUFFICIENCY HEREBY ACCEPTED AND ACKNOWLEDGED BY ALL PARTIES HERE TO,
>
> FITSKM LLC, a California limited liability company ("FITSKM LLC")
>
> sells and transfers ONE HUNDRED PERCENT (100%) of FITSKM LLC
>
> TO BRUGNARA CORPORATION, a California corporation ("BRUGNARA CORPORATION").
>
> THE UNDERSIGNED AGREE, UNDERSTAND, AND ACCEPT THE SALE AND TRANSFER OF FITSKM LLC:
>
> _____   9/28/21
> YITONG WEN
> FITSKM LLC
>
> _____   9/28/21
> LUKE BRUGNARA
> BRUGNARA CORPORATION
>
> US EX. 22 - 024

In sum, ownership of the 43rd Avenue house – through FITSKM LLC – ultimately passed to Brugnara's company.  Brugnara told the RRC none of this.

## III.   LEGAL STANDARD AND ARGUMENT

### A.  Legal Standard

Under 18 U.S.C. § 3142(g) the factors the Court must consider in determining whether there are conditions of release that will reasonably assure the appearance of the defendant and the safety of the community are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's

release. *See* 18 U.S.C. § 3142(g).

**B.    Argument**

As far as the nature and circumstances of the offense charged and weight of the evidence, Brugnara committed another fraud, just as he did back in 2014. Brugnara's false representations resulted in the distribution of $422,500 in loan proceeds, which, as stated, he then used to buy a house for his family instead of using it to cover payroll. Along the way, he also convinced a housekeeper to take out an approximately million dollar loan to help finance the purchase of the home. The weight of the evidence is also very strong. Among other things, Brugnara had over 90 recorded calls with the company that processed Brugnara's fraudulent PPP application (thus establishing he, and not his wife, was responsible for the loan application). And as far as his intent to defraud, all along Brugnara intended to use the PPP proceeds to purchase the 43rd Avenue house. In fact, he pursued the purchase as he worked through the PPP loan process.

As for history and characteristics of the defendant, they strongly favor detention. About a decade ago, after convincing Judge Alsup to allow him to meet with his lawyer outside of the courtroom, Brugnara literally ran from the federal courthouse. He was convicted of escape. Then, last year, while on supervised release, Brugnara absconded from supervision for two months. This violation, among other violations, led Judge Alsup to revoke Brugnara's supervised release and impose a 456-day term. That was in mid-2023.

And, more recently, Brugnara escaped again, this time from the RRC. The timeline of events surrounding that escape is significant. Brugnara voluntarily returned to the RRC after RRC staff could not find him at his purported place of business. At the RRC's request, USMS transported him to Santa Rita Jail. But then Brugnara claimed to be suicidal, so as a result, USMS had to return Brugnara to the RRC. And it was then – after realizing he could be going back to jail – that Brugnara escaped a second time. He was gone for six days before USMS arrested him. Brugnara has no intention of appearing in court given his established and recent history of escape. And he will be even more motivated to flee after learning about his exposure as a result of his fraud. Brugnara faces a minimum of 46-57 months based on his PPP fraud scheme.

Brugnara is also an economic danger to the community, one who has no intention of abiding by

any rules.  And he's proud of that.  Here's a text message he sent in March 2021 after he was able to secure the purchase of the 43rd Avenue house:

> Direction:
> Outgoing
> Body:
> I get out of prison with nothing 60 days ago and close a three million dollar house purchase ...I'm LUKE BRUGNARA..

Brugnara is a serial fraudster, a criminal through and through.  He is a man who has no respect for the rule of law or for this Court.  And he's going to commit more crime while on release.  This judicial district, more than any other, knows this.

Yesterday in court, Brugnara – who had to be physically removed from the courtroom – offered a taste of what's in store if he is released.  He will say and do whatever he wants.  And it's up to this Court to prevent that from happening.  Brugnara belongs in jail.

DATED:  June 27, 2024                                        Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney


_____/S/_____
RYAN ARASH REZAEI
Assistant United States Attorney